IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALCOA, INC.<br>1600 Harvard Avenue<br>Cleveland, OH 44105, | ) <br> ) <br> ) <br> ) | CASE NO.   1:12-cv-2433 |
| Plaintiff, | ) | Judge |
| v. | ) <br> ) | **COMPLAINT TO VACATE**<br>**ARBITRATION AWARD** |
| INTERNATIONAL UNION,<br>AUTOMOBILE, AEROSPACE,<br>AGRICULTURAL IMPLEMENT<br>WORKERS OF AMERICA, an<br>unincorporated labor organization,<br>5000 Rockside Road<br>Cleveland, Ohio 44131, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| UAW LOCAL 1050, an unincorporated<br>labor organization,<br>2507 Harvard Ave.<br>Cleveland, Ohio 44105, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Alcoa, Inc. ("Alcoa"), by and through its counsel, files the following Complaint to vacate an arbitration award:

### Parties

1.     Alcoa is a corporation that maintains a place of business within this District in Cuyahoga County, Ohio.  Specifically, Alcoa owns and operates the Cleveland Works, a factory located in Cuyahoga County, Ohio, within this District.

2.     The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and UAW Local No. 1050 ("Local 1050") (collectively, the "Union") are labor organizations within the meaning of the Labor Management Relations Act, 29 U.S.C. § 185, and represent certain of Alcoa's classified, hourly employees at the Cleveland Works.

### Jurisdiction and Venue

3.     Alcoa is an employer within the meaning of the Labor Management Relations Act and is in an industry affecting commerce as defined in 29 U.S.C. § 152(6).  Alcoa operates the Cleveland Works, which is located in Cuyahoga County, Ohio.  Alcoa engages in business within this Court's geographic jurisdiction.

4.     The UAW maintains an office at Liberty Plaza Building, 5000 Rockside Road, Cleveland, Ohio  44131 and Local 1050 maintains an office at 2507 Harvard Avenue, Cleveland, Ohio  44105, both within this District.  The Union engages in business within this District by virtue of its representation of certain of Alcoa's classified, hourly employees at the Cleveland Works.

5.     This Court has jurisdiction because this action arises under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the Union is engaged in representing employees of Alcoa within this Court's geographic jurisdiction as required by 29 U.S.C. § 185(c)(2).

### Background

6.     At all times material to this action, Alcoa and the Union have been parties to a collective bargaining agreement, known as the Agreement and Working Rules of 2006 (the "2006 Agreement'), governing the wages, hours and working conditions of Alcoa's classified

2

hourly employees at the Cleveland Works who are represented by the Union.  A copy of the relevant provisions of the 2006 Agreement are attached as Exhibit A.

7.     The 2006 Agreement provides procedures for resolving all differences, disputes and complaints arising over the interpretation or application of the agreements' contents.  The 2006 Agreement provides for preliminary discussion of grievances in an internal grievance procedure and, if those discussions do not resolve a grievance, for final and binding arbitration before a three (3) person board, which includes a neutral arbitrator selected by the parties (the "Arbitration Board").

8.     The Grievant, Local 1050, represents the Union members employed by Alcoa at the Cleveland Works.

### The Collective Bargaining Agreement

9.     The 2006 Agreement provides, at Article I - Purpose and Scope, as follows:

**Section 1 Coverage**

It is the intent and purpose of the parties to set forth certain agreements pertaining to wages, hours and other working conditions to be observed between the parties, and to provide procedures for the prompt and equitable adjustment of grievances.

**Section 2. Recognition**

The Company recognizes the Union as the exclusive collective bargaining agent for those employees of the Company in its Cleveland, Ohio plant for which the Union has heretofore been certified by the National Labor Relations Board, or for whom the Company has recognized the Union as the exclusive collective bargaining agency. . . .

**Section 3. Direction of the Working Forces (Cites in relevant part only)**

Except as may be limited by the provisions of this Agreement the operation of the plant and the direction of the working forces, including the right to hire, layoff, suspend, dismiss, and discharge

3

any employee for proper and just cause are vested exclusively with the Company.

**Section 4. Negotiation of Excluded Matters**

The Company is willing at all times to discuss and negotiate any matter pertaining to hours and working conditions not in conflict with or covered by this Agreement and not determined in negotiations of this Agreement. Such negotiations shall be with properly certified representatives of the Union with the object of reaching a satisfactory understanding.

Exhibit A, p. 6.

10.     The 2006 Agreement further provides, at Article V – Arbitration, as follows:

**Section 14. Jurisdiction**

A.     The Board of Arbitration shall regard the provisions of this Agreement and the Local Agreement Supplements as the basic principles and fundamental law governing the relationship of the parties. The Board's function is to interpret the provisions of the Agreement and to decide cases of alleged violation of such provisions. **The Board shall not supplement, enlarge, diminish, or alter the scope or meaning of the Agreement as it exists from time to time, or any other provisions therein, nor entertain jurisdiction of any subject matter not covered thereby (except to the extent necessary to determine its jurisdiction). Without limiting the foregoing, the subjects of wages (including incentives) and production standards are excluded from arbitration except that wage rates are arbitral for new or changed job classifications under the New and Changed Job Classifications Article of this Agreement and except that questions of compliance with Article III (Continuation of Wage Rates) are arbitrable.**

B.     Whenever the Board may determine that the subject of a dispute is, or a decision or award thereon would be, beyond its jurisdiction, or would contravene this Section 14, it shall dispose of the case by reducing such determination to writing and refer the dispute to the parties.

C.     The Board shall not take jurisdiction of any dispute or grievance arising under any prior agreements.

Exhibit A, pp. 13-14.

11.    The 2006 Agreement also provides, at Article IX – Hours of Work, Overtime and

Premium Pay, as follows:

**Section 21. Hours of Work**

**The normal work day shall be eight (8) hours and the normal workweek shall be forty (40) hours, being the normal time worked at straight time rates.**  Nothing in this Section is a guarantee of work or an number of hours of work, or a limitation on scheduling the work. . . . [Emphasis added]

Exhibit A, p. 18.

12.    The 2006 Agreement additionally provides, at Article XXIII – Rights Under This

Agreement, as follows:

**Section 45. Other Agreements**

No contract or agreement, oral or written, affecting the employees to whom this Agreement applies shall be entered into between the Company and any employee or group of employees **or their representative or representatives that will in any way conflict with or supersede this Agreement during its life except as may be mutually agreed upon by the signatory parties to this Agreement.**  [Emphasis added]
**Section 46. Local Agreements**

**A.      Present local arrangements, on matters covered by this Agreement, which are not in conflict with this agreement, which apply or interpret the terms of this agreement, and which were in effect prior to the execution of this Agreement of October 28, 1956, or which subsequently thereto became effective through operation of Section 46B of this Agreement, will remain in effect for the period of this Agreement unless modified or terminated by agreement of the local Union and local Management.**

**B.      Any future local agreements applying or interpreting the terms of this Agreement shall be in writing and approved by the local Union, a representative of the International Union, the Plant or Works Manager or his designated representative, and a representative of the Company's Industrial Relations Staff in order to be valid in any future application of the terms of this Agreement.  [Emphasis added.]**

5

Exhibit A, pp. 48-49.

## Alcoa Exercised Its Rights Under The 2006 Agreement

13.     Pursuant to Section 21 of the 2006 Agreement, Alcoa pays its employees at the Cleveland Works who are represented by the Union for an eight (8) hour workday, which has included paid lunch and break periods.

14.     Alcoa's August 30, 2012, actions in reducing the duration of break and lunch periods were not arbitrary or capricious, but were instead implemented in response to business conditions and were consistent with the Management Rights provisions of the Labor Agreement. Moreover, there are no provisions of the Labor Agreement that prohibit the Alcoa's actions and the affected employees continue to be paid for eight (8) hours per day and continue to receive paid lunch and break periods, although working time has been increased seven and one-half percent (7.5%) and the idle paid periods have been correspondingly reduced.

15.     Alcoa, consistent with its obligations under § 4 of Article I was willing to meet and offered to meet with the Union on August 18 and August 19, 2010 to discuss and negotiate the issue of reducing the duration of break and lunch periods.  It was the Union, on August 19, 2010 that declined the offer to discuss and negotiate, instead taking the position that the settlement for Grievance No. FP 05-94 constituted an agreement concerning the matters and that "past practice" prohibited the Company from implementing the changes it proposed.  A copy of the settlement for Grievance No. FP 05-94 is attached as Exhibit B.

16.     The grievance settlement relied on by the Union was a narrow resolution of the issue that existed at the time.  As such, it is not a "valid" local agreement that would be binding upon the parties in the future application of the Labor Agreement within the meaning of Sections 45 and 46 of the Labor Agreement.  Section 45 explicitly states that language which contradicts

6

the national agreement must be "…mutually agreed upon by the signatory parties to this Agreement."  Since the grievance settlement relied upon by the Union was not signed by the parties to the 2006 Agreement, it cannot be relied upon as an agreement that supersedes the provisions of the 2006 Agreement.

17.     Neither can the grievance settlement be considered a local agreement "…applying or interpreting the terms of this Agreement…"  The explicit provisions of Section 46 of the 2006 Agreement required such an agreement be signed by "…a representative of the International Union…and a representative of the Company's Industrial Relations Staff in order to be **valid** in any future application of the terms of this Agreement."  **[Emphasis Added.]**  Lacking the required signatories, the grievance settlement cited by the Union cannot have the effect of superseding the provisions of the 2006 Agreement under Section 45, nor can it be considered as having the effect of applying or interpreting the terms of the 2006 Agreement under Section 46.

18.     Section 45 of Article XXIII is a "zipper" clause.  In essence, it states that the 2006 Agreement is the agreement between the parties and unless modified in writing by the appropriate signatories, it shall govern the contractual relationship between the parties.  There is no 2006 Agreement provision that specifically addresses the duration of lunch times or break times.  Therefore, Management has retained its rights under Section 3 of Article I of the 2006 Agreement to direct the working forces, including with respect to the duration of lunch times and break times.

19.     There can be no question of the Company's retained rights.  In a decision of a prior Arbitration Board at the Cleveland Plant, Arbitration Case No. 76-3-C, similar to the issues currently before the Board, it was stated:

> **The Union**, as the representative of the collective bargaining unit,
> **has only those rights which are granted to it by the law of the**

7

**land and by the specific language of the Agreement between the parties.  The Company retains all of its inherent rights not specifically abrogated by the Agreement between the parties; and, in addition, the Company also retains all of the residual rights possessed by an employer, whether or not such residual rights are now known or may later be discovered.**

Since, in the Board's opinion, the Agreement between the parties does not contain a specific mandate that the Company must schedule all of the bargaining unit members to work an 8 hour day, **nor does the Agreement contain a specific mandate that the Company must schedule a 15 minute lunch period for all of such employees; the Company is then free not to schedule in such a manner.  [Emphasis added.]**

Exhibit C, pp. 6-7.

20.     And, later in the same decision, the prior Arbitration Board stated:

Where there is an ambiguity found in any of the words of a written Collective Bargaining Agreement, oral testimony would be admissible to explain the ambiguity; however, in the opinion of the Board, **no ambiguity exists in the Agreement between the parties as concerns the Company's obligation to schedule all member of the bargaining unit to work an 8 hour work day with a 15 minute paid lunch period, because the Company has no such obligation.  [Emphasis added.]**

Exhibit C, p. 9.

21.     Finally, the prior Arbitration Board stated:

…**the Agreement between the parties provides that the Company may exercise all of the inherent rights of an employer except as those rights are limited by the specific language of the Agreement, and when additional limitations are placed upon the Company's inherent rights to manage the business enterprise, such a new limitation, constitutes an alteration of the Agreement between the parties.  The Board is prohibited by the terms of the very Agreement which created the Board, from supplementing, enlarging, diminishing, or altering the scope or meaning of the Agreement between the parties.  [Emphasis added.]**

Exhibit C, pp. 9-10.

22.     In another decision from a different Arbitration Board at the Cleveland Works, Arbitration Case No. 191-C, Management's right to schedule the work force under Article I, Section 3, was upheld when the Arbitration Board stated:

> **Under Article I, Section 3 the Company retains the right to operate the plant and direct the working forces.**  Under Article IX, Section 20 the parties have also agreed that nothing in this section is a limitation on scheduling the work.  **It must therefore be concluded that the right to schedule the working forces is a right reserved to management.**  For these reasons the union grievance is denied.  **[Emphasis added.]**

Exhibit D, pp. 8-9.

23.     In a 2011 decision from the very same plant, Arbitration Case No. FP 08-07, yet another Arbitration Board considered a claim that Management's Rights evaporate when the Company fails to exercise them over a long period:

> **As with all management rights, the failure of the employer to exercise a right over time, even a long period of time, does not diminish its ability to do so.**  For instance, most collective bargaining agreements acknowledge the inherent management right to establish staffing levels.  **The fact that an employer has not exercised its right to reduce staffing levels, even over a lengthy period of time stretching into decades, does not diminish its right to do so.  [Emphasis added.]**

Exhibit E, p. 5.

24.     There being no specific language that limits Management's right to implement the changes regarding the duration of lunch and break periods, as well as the fact that there can be no binding past practice, preclude the result reached by the present Arbitration Board.

25.     The present Arbitration Board, however, exceeded the authority granted it under the 2006 Agreement when it held:

> Management has the right to change the hours.  But when it does, and as it increases the work load, it is required to pay commensurate with the increased burden.

Exhibit F, p 17.

26.     This holding is beyond the Arbitration Board's authority because Section 14.A, Jurisdiction, of the 2006 Agreement explicitly states that "the subjects of wages (including incentives) and production standards are excluded from arbitration . . ." Exhibit A, p.14.

27.     The current Arbitration Board also exceeded its authority under the 2006 Agreement when it held:

> Nevertheless, on balance, there are competing ways of analyzing this. The employer made the changes, and it is not going to be required to remake operations. Management's rights to run it shop need to be vindicated.
>
> However, it is required to make the affected employees whole, and to pay them for the increased work and time. On the other hand, since they may simply have become more efficient, and may not actually have more time, it is possible that some form of "gain sharing" would be a fair way of resolving the matter. This is something the parties can best work out between themselves – essentially, they could retroactively do the negotiations in the manner that should have been accomplished in the first place.

Exhibit F, p. 23.

28.     This holding is also beyond the Arbitration Board's authority under Section 14.A. of the 2006 Agreement.

## Count I

29.     Alcoa incorporates herein paragraphs 1 through 28 set forth above.

30.     An arbitration award may be vacated under 29 U.S.C. § 185 where the award does not draw its essence from the contract, where the award does not follow the law of the shop, where the arbitrator has imposed his own brand of industrial justice, as where the arbitrator has

exceeded the scope of the authority granted under the contract, or where the award violates public policy.

31.    The Arbitration Board's award does not draw its essence from the 2006 Agreement.

32.    The Arbitration Board's decision also evinces a manifest disregard for the law of the shop to the extent the Award is contrary to prior arbitration awards pertaining to the same Cleveland Works at issue herein.

33.    The Arbitration Board also imposed its own brand of industrial justice when it exceeded the scope of the authority extended to the Arbitration Board under the 2006 Agreement by holding that Alcoa must negotiate increased compensation with the Union on account of having reduced the duration of lunch and break periods.

WHEREFORE, Alcoa, Inc. prays that this Court render judgment vacating the Arbitration Board's award and awarding Alcoa attorney's fees and costs.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By:    /s/ Michelle R. Arendt
Thomas H. Barnard (0001569)
Bruce G. Hearey (0009087)
Michelle R. Arendt (0070013)
127 Public Square, 4130 Key Tower
Cleveland, OH  44114
216-241-6100 – Telephone
tom.barnard@ogletreedeakins.com
bruce.hearey@ogletreedeakins.com
michelle.arendt@ogletreedeakins.com

*Counsel for Alcoa, Inc.*

13255833.1  09/27/2012

11