IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALCOA, INC., | ) | CASE NO. 1:12 CV 2433 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| INTERNATIONAL UNION, | ) | |
| AUTOMOBILE, AEROSPACE, | ) | |
| AGRICULTURAL IMPLEMENT | ) | **MEMORANDUM OPINION AND** |
| WORKERS OF AMERICA, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

## Introduction

Before me[1] in this action by Alcoa, Inc. against International Union, United Automobile, Aerospace, Agricultural Implement Workers of America ("UAW") and UAW Local 1050 (collectively "Union") to vacate an arbitrator's award and order in favor of the Union,[2] are cross-motions for summary judgment by Alcoa[3] and the Union.[4] Each party has

---

[1] This matter was referred to me under Local Rule 3.1 by United States District Judge Lesley Wells by order dated December 6, 2012 (ECF # 10). The parties subsequently consented to my jurisdiction. ECF # 17.

[2] ECF # 1.

[3] ECF # 19.

[4] ECF # 20.

briefed its own motion[5] and replied to the opposing party's motion.[6] The Union has also filed a counterclaim seeking an order forcing Alcoa to enter into the discussions on a remedy ordered in the arbitration and to obtain retroactive interest on any monetary award.[7]

For the reasons that follow, the Union's motion for summary judgment will be granted and that of Alcoa will be denied. The Union's counterclaim will be granted in part insofar as it seeks to have Alcoa participate in the discussion ordered in the award, and denied in part as premature insofar as it seeks any retroactive interest.

## Facts

### A.     The CBA and work rules

Alcoa and the Union entered into a collective bargaining agreement ("CBA") on September 30, 2006.[8] Sections 1 and 2 of the CBA set forth that both parties shall set certain agreements pertaining to wages, hours, etc.[9] and recognizes the Union as the exclusive bargaining agent for the employees of the Cleveland, Ohio, plant.[10] Section 3 gives Alcoa the right to operate the plant and direct its work forces except for limitations expressly set out

---

[5] ECF # 19 (Alcoa); ECF # 20, Attachment 1 (Union).

[6] ECF # 21 (Alcoa opposition); ECF # 22 (Union opposition).

[7] ECF # 7.

[8] ECF # 4-1, Exhibit A at 1.

[9] *Id.*, at 2.

[10] *Id.*

in the provisions of the agreement.[11] Section 21 establishes that the normal workday shall be 8 hours and the workweek shall be 40 hours at straight time rates.[12] The CBA Section 45 establishes that contracts or agreements that conflict with or supersede the Agreement and affect the employees to whom the Agreement applies shall not be made except those mutually agreed upon by the parties of this Agreement.[13]

## B.    The conduct at issue

The facts relevant to the conduct at issue, as found by Stanley Dobry, the umpire of the arbitration board,[14] are as follows:

In 2010 management began considering operating efficiencies they believed would help make the Cleveland plant more productive. Toward that end, Alcoa reduced the number of shifts from three down to two per day,[15] and began negotiations pertaining to realigning and reducing the sixteen shift start times.[16] But, when overall agreement on the shift start times could not be met, Alcoa implemented the new start times on its own.[17]

---

[11] *Id.*

[12] *Id.*, at 5.

[13] *Id.*, at 6.

[14] ECF # 7-2, Exhibit B.

[15] *Id.*, at 5.

[16] *Id.*

[17] *Id.*

During the initial implementation of this shift realignment, break times and lunch times within the new structure were reduced from their previous length.[18] After the Union complained about these reductions, Alcoa management restored the original break and lunch times.[19] Alcoa and the Union then met to discuss the reduced break times, but when the Union told Alcoa that it believed the CBA already covered the issue and so it would have no further conversations, Alcoa implemented its new procedures on its own.[20]

The implemented changes, among other things, eliminated the personal clean-up time at the end of each shift and other break times for which workers had previously been paid.[21] Essentially, the changes reduced the paid "idle time" from 95 minutes per shift, or approximately 20% of an eight-hour shift, to 60 minutes, or 12.5% of an eight-hour shift.[22] Employees were still paid for the full eight-hour workday,[23] and a 30-minute lunch break still remained.[24]

------

[18] *Id.*

[19] *Id.*, at 5-6.

[20] *Id.*, at 6.

[21] *Id.*

[22] *Id.*

[23] *Id.*, at 7.

[24] *Id.*, at 6.

**C.      The arbitration; the arbitration board's opinion and award**

The arbitration hearing was held on October 27, 2011.[25] At arbitration, the issue was if Alcoa violated the CBA when it reduced/eliminated the amount of paid idle time defined as breaks, lunch, etc.[26] The arbitration board, consisting of an Alcoa delegate, a Union delegate, and a non-affiliated umpire, determined that Alcoa did violate the CBA[27] and determined that the grievance be denied in part and granted in part.[28]

The arbitration board based its decision on past practices[29] as well as implicit assumptions upon which pay rates were based, and the arbitration board explained that decision as proceeding from an integrated reading of the CBA.[30] The arbitration board found that the idle time breaks were well established and mutually understood to be how things were done.[31] It further determined that the breaks were a past practice that gave meaning to the language of the contract, and were carried forward into the CBA "as a matter of fact."

In particular, the arbitration board found that "[b]y increasing the hours worked and eliminating break times, [Alcoa] acted in derogation of the implicit assumptions upon which

---

[25] *Id.*, at 2.

[26] *Id.*, at 3.

[27] *Id.* at 25.

[28] *Id.*

[29] *Id.* at 21.

[30] *Id.*

[31] *Id.*

the pay rates [of the CBA] were understood to be based."[32] Because compensation remained the same but the amount of hours actually worked increased, the result was the pay for each hour worked had been diminished.[33]

## D.     Issues on summary judgment

In the suit Alcoa contends that the arbitration award did not draw its essence from the 2006 CBA[34] and that the arbitration board failed to construe the provisions of the parties' CBA but instead impermissibly looked to outside sources to find obligations existing beyond those set forth in the CBA.[35] In doing so, Alcoa maintains, the arbitration board also exceeded its authority by altering the terms of the CBA and fashioning a remedy that included non-arbitral matters.[36]

The Union has here also moved for summary judgment,[37] contending first that the arbitration board acted properly and did not exceed its authority and that the Union is, therefore, entitled to prevail as a matter of law.[38] It further asserts, as a counterclaim, that Alcoa be ordered to comply with the arbitration decision retroactive to August 14, 2012, with

---

[32] *Id.*

[33] *Id.*

[34] ECF # 19 at 1.

[35] *Id.*

[36] *Id.*

[37] ECF # 20.

[38] ECF # 7.

-6-

interest.[39] Alcoa has responded by contending that the arbitrator did not act properly, and further arguing that the counterclaim be denied and dismissed with prejudice.[40]

## Analysis

### A.    Standard of review – summary judgment

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[41] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[42]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[43] Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[39] *Id.* at 4.

[40] ECF # 12 at 3.

[41] Fed. R. Civ. P. 56(c).

[42] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[43] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

evidentiary standards.[44] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[45]

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[46] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[47] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[48]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[49] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[50]

---

[44] *Id.* at 252.

[45] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[46] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[47] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[48] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[49] *Id.* at 252.

[50] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[51] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[52] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[53]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[54] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

---

[51] *Anderson*, 477 U.S. at 256.

[52] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[53] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[54] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

-9-

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[55]

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[56]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[57] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[58] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[59]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can

---

[55] *Id.* at 225-26 (citations omitted).

[56] *Id.* at 226 (citations omitted).

[57] *Anderson*, 477 U.S. at 248.

[58] *Id.* at 249.

[59] *Id.*

-10-

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[60]

## B.  Application of standard – the Union is entitled to judgment as a matter of law

### 1.  *Michigan Family Resources scope of review*

As both parties agree,[61] the Sixth Circuit's 2007 *en banc* decision in *Michigan Family Resources v. Service Employees International Union*[62] provides the analytical framework for addressing the present case. The Sixth Circuit has long held that a federal district court's review of an arbitrator's decision is extremely limited;[63] indeed, "'one of the narrowest standards of judicial review in all of American Jurisprudence.'"[64] Specifically, as the Supreme Court has stated, "as long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate."[65] The Supreme Court has also stated that "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the

---

[60] *Id.* at 250.

[61] ECF # 20, Attachment 1 at 6 (Union); ECF # 21 at 1 (Alcoa).

[62] *Michigan Family Resources v. Service Employees Int'l Union*, 475 F.3d 746 (6th Cir. 2007) (*en banc*).

[63] *Truck Drivers Local No. 164 v. Allied Waste Syss.*, 512 F.3d 211, 216 (6th Cir. 2008).

[64] *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767, 771 (6th Cir. 1998) (quoting *Lattimer-Stevens v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)).

[65] *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotations omitted).

-11-

fact that a court is convinced that he committed serious error does not suffice to overturn his decision."[66]

Accordingly, on that foundation, the Sixth Circuit in *Michigan Family Resources* articulated the scope of judicial review of arbitrator's decisions to be as follows:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted, even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.[67]

As to the first element in the *Michigan Family Resources* inquiry – whether the arbitrator acted outside his authority by adjudicating an issue "not committed to arbitration" – the Sixth Circuit in *Truck Drivers* stated that *Michigan Family Resources* "severely curtailed the 'scope of authority' concept in reviewing arbitration awards: the arbitrator exceeds his authority not when he merely makes an interpretive error but *only* when the collective bargaining agreement does not commit the dispute to arbitration."[68]

Similarly, as concerns the issue of permitting an award to stand when an arbitrator was "arguably construing or applying the contract," *Michigan Family Resources* clearly stated that this element "'respects the parties' decision to hire their own judge to resolve their

---

[66] *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

[67] *Michigan Family Resources*, 475 F.3d at 753 (citations omitted).

[68] *Truck Drivers*, 512 F.3d at 217 (quoting *Michigan Family Resources*, 475 F.3d at 756)(emphasis original).

disputes, ... 'respects the finality clause in most arbitration agreements,' and sets forth a policy 'whose imperfections can be remedied by hiring better arbitrators.'"[69]

In sum, *Michigan Family Resources* teaches that, properly understood and applied by reviewing courts, this highly deferential standard will permit "only the most egregious awards to be vacated."[70]

### 2.    *Nothing in the arbitration award meets the Michigan Family Resources test for overturning that award, so the Union is entitled to summary judgment.*

As noted, *Michigan Family Resources* recognizes three types of error that will be sufficient to overturn an arbitration award: (1) the arbitrator acted outside the scope of his authority, (2) the arbitrator engaged in fraud or other dishonest conduct, or (3) the arbitrator failed to arguably construe or apply the contract.  Here, Alcoa has made no allegation of any fraud or dishonesty, so the two areas for review are (a) whether the arbitration board here acted outside of the scope of its authority, or (b) whether it failed to arguably construe or apply the contract.

### a.    *Exceeding the scope of authority*

Alcoa claims that the arbitration was outside the scope of contractual authority by addressing wages and production standards – both of which are excluded from arbitration by the language of the CBA.[71] Further, Alcoa argues that although the submitted issue may have

---

[69] *Id.* at 753-54 (internal citations omitted).

[70] *Id.* at 753.

[71] ECF # 21 at 2 (quoting CBA).

-13-

been within the scope of the CBA, the actual basis for the award was beyond the scope of the arbitration board to fashion.[72]

i.      Waiver

For its part, the Union maintains first that Alcoa waived any objection to these issues being considered in the arbitration by not raising an objection prior to submitting the issues to arbitration.[73] Moreover, the Union asserts that the issue submitted – "Did the Company violate any provision of the Labor Agreement when it reduced/eliminated the amount the Company paid for idle time (lunch breaks, etc.)?" – fell directly under an explicit term of the CBA, which provides that the Arbitration Board's function is to interpret the provisions of the CBA and decide cases of alleged violations.[74]

Alcoa presents a somewhat more nuanced argument on the question of an implied waiver than the Union acknowledges. While tacitly accepting the Union's claim that generally a "beyond the scope" claim is waived when no objection is raised prior to commencement of the arbitration, Alcoa contends that no objectionable issue existed in the question that was referred to arbitration but asserts that a basis for objection arose during the proceedings when it became clear that the arbitration board intended to purportedly go beyond the submitted question "to consider the issue of wages, even though such an issue

---

[72] *Id.* at 4.

[73] ECF # 20 at 8.

[74] *Id.* at 9.

was not one committed to arbitration."[75] Once this approach "became apparent" during the proceedings of the arbitration board, Alcoa maintains that it then raised the jurisdictional objection with the umpire at the earliest moment possible, but that it was rejected.[76]

Briefly stated, the general rule in the Sixth Circuit is that a party may waive an objection to the jurisdiction of an arbitrator at the moment of submission "by acquiescing in the arbitration *with knowledge of the possible defect.*"[77] Furthermore, as to whether a waiver must be expressed or may be implied, the basic rule is that "[a]lthough a waiver may be implied and not express, there must be evidence in the record to support that implication."[78] Further, the party claiming a waiver bears the burden of proof.[79]

Here, the Union has pointed to no evidence in the record to support a finding of an implied waiver of any "scope of authority" argument by Alcoa beyond the mere fact that no objection was raised with the initial submission. While the parties' pre-arbitration grievance discussions suggest that Alcoa might have known that its decision to submit an issue to arbitration specifically directed to "the amount the company paid" for break time could have

---

[75] ECF # 21 at 3.

[76] *Id.*

[77] *Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (citation omitted) (emphasis added).

[78] *Carter v. Sowders*, 5 F.3d 975, 981 (6th Cir. 1993).

[79] *Nationwide Mutual Ins. Co.*, 330 F.3d at 846 (citation omitted).

involved consideration of wages and compensation, this evidence was not developed or presented here.[80]

That said, the burden to show an implied waiver by pointing to evidence in the record remains with the Union. As noted, the evidence that Alcoa knew of any jurisdictional defect at the time the matter was submitted to arbitration is mostly suggested by a few references to pre-arbitration negotiations and not conclusively established. Further, the mere fact that Alcoa raised its jurisdictional objection during the arbitration is itself not fatal.[81]

Accordingly, I decline to find on this record that the Union has met its burden of showing that Alcoa implicitly waived any right to challenge scope of the arbitration.

ii.     Scope of authority discussion

As to the first *Michigan Family Resources* question – whether the award was beyond the scope of the agreement – the arbitration board entered the award specifically upon finding that Alcoa violated Article IX of the CBA.[82] The opinion did so by reading the CBA as "an integrated whole" and finding that it requires any increase in the workload be compensated

---

[80] The arbitration board's opinion itself offers some insight here. Alcoa's position in the grievance discussions preceding arbitration apparently was that workers experienced no loss in pay as a result of effectively extending the workday. ECF # 19, Attachment 3 at 13. The Union position was to the contrary. *See*, *id.* More fully developed, this might have been firmer evidence of Alcoa's knowledge of what the scope of arbitration could include, and so grounds for an implied waiver.

[81] *Id.*; *see also*, *Batesville Casket Co. v. United Steel Workers of America, Local Union No. 9137*, No. 4:07-CV-12, 2008 WL 4066105, at **6-7 (E.D. Tenn. Aug. 26, 2008) (citations omitted).

[82] ECF # 22 at 8 (citing award).

for by "pay commensurate with the increased burden."[83] In particular, as noted above, the arbitration board found Alcoa had violated an implied mutual assumption regarding the effective pay rate per hour and thus overall compensation, which assumption was relied on by the Union in agreeing to the 2009 extension of the CBA.[84]

Alcoa's arguments on the scope of authority essentially question the extent to which the background context, past practices, or shared assumptions of an agreement can be considered to be a part of that agreement, or within its scope, when the agreement is before an arbitrator. Here, the arbitration board provided a detailed, well-documented discussion of how every contract contains an implied covenant of fair dealing that informs the parties' conduct in matters specifically covered by the agreement,[85] as well as a more specific discussion of the past practice regarding break times and how the 2009 contract extension essentially ratified those practices.[86] So understood, the award here by its own terms comes out of the CBA, which in 2009 ratified or incorporated the parties' past practices on break time and which must be interpreted in light of the implied covenants.

While I may not have adopted this result and reasoning upon *de novo* review, it is plainly the result of the particular interpretive approach undertaken by the arbitration board and expressed with some degree of clarity and thoroughness in the opinion. Thus, as the

---

[83] ECF # 19, Attachment 3 at 17.

[84] *Id.* at 20.

[85] *Id.* at 14-16.

[86] *Id.* at 17-22.

Sixth Circuit in *Truck Drivers* precisely observed, Alcoa's argument about the award exceeding the scope of the CBA is not so much an attack on the scope of arbitration itself, but "is better characterized as a challenge to the arbitrator's interpretation" of the CBA.[87]

So understood, Alcoa's challenge to the interpretation of the Agreement given by the arbitration board here does not make out a case that the arbitration board acted beyond the scope of its authority under that prong of *Michigan Family Resources*.

b.    *Arguably construing and applying the Agreement*

Alcoa makes several related arguments as to why the arbitration board was not arguably construing or applying the Agreement:

(1)    the award did not discuss prior arbitration decisions construing the same language of the CBA;[88]

(2)    the arbitration award relied on past practices "rather than the clear and unambiguous language" of the CBA;[89] and

(3)    the arbitration board could not have been construing the CBA since it reached a decision that violates the CBA.[90]

The arguments raised here by Alcoa must be viewed in light of *Michigan Family Resources* teaching that "in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and that if there is doubt we will presume that the

---

[87] *Truck Drivers*, 512 F.3d at 217.

[88] ECF # 21 at 4-6.

[89] *Id.* at 6-7.

[90] *Id.* at 8-10.

arbitrator was doing just that."[91] Indeed, the Sixth Circuit is quite clear that "even 'serious' interpretive errors by the arbitrator must be tolerated; [the court] may only vacate an award where the arbitrator was so ignorant of the agreement's plain language 'as to make implausible any contention that the arbitrator was construing the contract.'"[92]

Here, this arbitration award "cannot be said to be so untethered from" the CBA as to warrant its reversal.[93] The award here, as was the case in *Michigan Family Resources*, "has all the hallmarks of interpretation[, in that it] quotes from and analyzes the pertinent provisions of the contract, and at no point does [it] say anything to indicate that the [arbitration panel] was doing anything other than trying to reach a good-faith interpretation of the contract."[94] Indeed, as discussed above, the award opinion clearly sets forth its interpretation of the CBA and supports that interpretation with a relatively thorough discussion of the reasons.

The fact that Alcoa would have preferred that the contract interpretation place greater weight on allegedly relevant past arbitrator's interpretations[95] while affording lesser weight to the past practices of the parties, or look solely to the contract language without

---

[91] *Michigan Family Resources*, 475 F.3d at 753.

[92] *Kroger Company v. United Food & Commercial Workers Union Local 876*, 284 F. App'x 233, 239 (6th Cir. 2008) (quoting *Michigan Family Resources*, 475 F.3d at 753).

[93] *Id.*

[94] *Michigan Family Resources*, 475 F.3d at 754.

[95] *See*, ECF # 19 at 14-15. The past decisions all predate the changes in idle time compensation.

consideration of any implied covenants or mutual assumptions, plainly does not disturb the

underlying point that the present award represented a situation where the arbitration board

opinion is arguably seeking to construe or apply the CBA in the context of the changes to

break times. As the Sixth Circuit noted in *Appalachian Regional Healthcare, Inc. v. Kentucky*

*Nurses Association*,[96] an arbitration award that relies on past practice and "applie[s] context

to interpret seemingly explicit[97] language," will be enforced as one where "the arbitrator

*appeared* to be engaged in interpretation."[98]

Again, no matter whether  the arbitration board's interpretation of the CBA here  was

a "serious" mistake, or otherwise "improvident" or even "silly," the reviewing court "cannot

---

[96] *Appalachian Regional Healthcare v. Ky. Nurses Ass'n*, No. 06-6470, 2007 WL 4269063 (6th Cir. Dec. 4, 2007).

[97]  As to what constitutes explicit contract language, the Sixth Circuit suggests in *Kroger* that only such "cut-and-dry numerical" contract language as a precise wage amount will be considered to have such plain meaning that no interpretation is needed. *Kroger*, 284 F. App'x at 240 n.3 (citation omitted). Moreover, even *Kroger* does not address a situation where otherwise plain language becomes ambiguous by changed circumstances.

[98] *Appalachian Regional*, 2007 WL 4269063, at *2. *Dematic Corp. v. UAW*, 635 F. Supp. 2d 662 (W.D. Mich. 2009), cited by Alcoa as proof that reference to past practice is somehow impermissible in interpreting a contract (ECF # 21 at 7), does not stand for so sweeping a holding. Rather, *Dematic* upholds the unremarkable basic principle of contract interpretation that an unambiguous clause of a contract will be enforced despite any prior past practices to the contrary. *Dematic*, 635 F. Supp. 2d at 673. It is this use of past practice to modify clear and unambiguous contract language that is mentioned in the quotation cited by the arbitration board as being  "controversial." Opinion at 19. *Dematic* does not address the situation, as here, where unambiguous past practice was used to explain or clarify ambiguity created by interpreting the contract in the context of the new work schedules. While Alcoa suggests that no ambiguity was ever specifically cited by the arbitration board, ECF # 21 at 7, the opinion itself shows that the arbitration board opinion went to some length to detail the contours of the  ambiguity it found, Opinion at 21-23, before concluding that "to some extent, there is contractual ambiguity," Opinion at 23.

disturb it" under *Michigan Family Resources* unless one of the specific grounds for reversal is established.[99] As discussed, I find that Alcoa has not shown that the opinion failed to arguably construe or apply the CBA. Thus, Alcoa has not established a basis for overturning that opinion.

c.    *The Union's counterclaim*

In its counterclaim,[100] the Union seeks to: (1) confirm the arbitration decision and award, (2) order Alcoa to comply with that decision, and (3) obtain prejudgment interest retroactive to August 14, 2012.[101]

As has been extensively discussed, by virtue of denying Alcoa's motion for summary judgment and granting that of the Union's, the decision and award of the arbitration is confirmed. Further, that decision of itself discussed compliance by remanding the issue of break times "to the parties so that they can develop a factual record and make the appropriate adjustments, in light of the foregoing opinion."[102] In particular, the award notes that there are "a great many ways" the parties might reconcile their "competing theories and interests" in fashioning a remedy, and so the award specifically left any resolution to the parties at the negotiating table, with the arbitration board retaining jurisdiction over that process.[103]

---

[99] *Id.* (quoting *Michigan Family Resources*, 475 F.3d at 753).

[100] ECF # 7.

[101] *Id.* at 3-4.

[102] Award at 25.

[103] *Id.*

With that clear statement of the award in mind, the Union's counterclaim is denied insofar as it seeks to order Alcoa's compliance with the decision or to obtain retroactive prejudgment interest. First, there is no reason to believe that a separate order of this Court is required to obtain Alcoa's further compliance with the arbitration award and decision once it has been affirmed here. Further, given that there is now no known amount of compensation determined in the award itself, and also given the unambiguous direction of the award to the parties to work out *all* the details of the remedy by themselves at the negotiating table under the continuing jurisdiction of the arbitration board, I conclude that the counterclaim's request for an immediate award of prejudgment interest on a non-specific amount to be determined later by further negotiations must be denied as premature.

## Conclusion

For the foregoing reasons, the motion for summary judgment by Alcoa is denied and the summary judgment motion of the Union is granted. The counterclaim of the Union is granted in part and denied in part as is more fully set forth above.

IT IS SO ORDERED.


Dated: December 31, 2013                           s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

-22-